# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA
# COVER SHEET

| | |
|---|---|
| KURT L. EHRESMAN | |
| Plaintiff | |
| | CIVIL ACTION NO: |
| v. | |
| THE HERSHEY COMPANY | |
| Defendant | JURY TRIAL DEMANDED |

For Plaintiffs:

Michael R. Kelley, Esquire
Wendell V. Courtney, Esquire
Smigel, Anderson & Sacks, LLP
4431 North Front Street
Harrisburg, PA  17110
(717) 234-2401
mkelley@sasllp.com

For Defendants: Unknown

## **COMPLAINT**

### **SUBMITTED BY MICHAEL R. KELLEY, ESQ.**

**SMIGEL, ANDERSON & SACKS, LLP**
River Chase Office Center
4431 North Front Street, 3rd Floor
Harrisburg, PA 17110-1778
(717) 234-2401

**Michael R. Kelley, Esquire**
I.D. No. 58854
**Wendell V. Courtney, Esquire**
I.D. No 32103
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KURT L. EHRESMAN         :
                         :
   Plaintiff             :
                         :    CIVIL ACTION NO:
                         :
   v.                    :
                         :
THE HERSHEY COMPANY      :
                         :
   Defendant             :    JURY TRIAL DEMANDED

## COMPLAINT

AND NOW COMES Plaintiff Kurt L. Ehresman, by and through his attorneys, Smigel, Anderson & Sacks, LLP, and makes the following Complaint:

## PARTIES

1.      Plaintiff, Kurt L. Ehresman, is an adult individual who resides at 301 Mercury Drive, Mechanicsburg, PA 17050, and is a Citizen of the United States of America.

2.      Defendant, The Hershey Company, is a Delaware corporation with its U.S. Headquarters and business offices located at 100 Crystal A Drive, Hershey, PA 17033.

## JURISDICTION AND VENUE

3.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under a law of the United States. This Court also has supplemental jurisdiction over Plaintiff's state law claims because they arise from a common nucleus of operative facts.

4.      Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) and 1391(b)(2), because Defendant's principal place of business is located within this judicial district and because a substantial part of the events giving rise to Plaintiff's claims set forth herein occurred in this judicial district.

5.      Plaintiff has properly exhausted all of his administrative remedies by initially filing a complaint with the Equal Employment Opportunity Commission

("EEOC") and obtaining a right to sue letter from the EEOC prior to filing the instant lawsuit.

## FACTUAL BACKGROUND

6. Plaintiff's age is 52, his gender is Male, and his race is Caucasian.

7. Plaintiff is a Pennsylvania Licensed Attorney in good standing since 1996.

8. Plaintiff is a Federally-licensed United States Patent & Trademark Office Registered Patent Attorney in good standing.

9. Plaintiff was first employed by Defendant in the title as "Counsel, Technology Intellectual Property" beginning on August 23, 2013.

10. From April 2013 until August 23, 2013, Defendant recruited Plaintiff to accept employment as the first licensed patent attorney in the history of The Hershey Company.

11. In interviewing with representatives of Defendant, Plaintiff expressly raised his concern that, at age 47, he sought stability and assurances from Defendant that his employment with Defendant could endure until his retirement from employment.

12. Defendant's representatives expressly cited the long careers of then-employed attorneys of Defendant, Bryan Simmons, Esq., whose employment with

3

Defendant had endured over 25 years, and Lois Duquette, Esq., whose employment with Defendant had endured over 10 years, and that both expected to retire from Defendant upon reaching retirement age.

13. In interviewing Plaintiff, Defendant's representatives stated and acknowledged that Plaintiff would only be permitted to represent Defendant in his capacity as an attorney, that Plaintiff would be required to give up his private practice and entire portfolio of clients, and that the offered employment could be expected to last to retirement if Plaintiff's job performance was acceptable.

14. In reliance upon Defendant's representations, Plaintiff accepted the position as Counsel, Technology Intellectual Property, effective August 23, 2013.

15. Plaintiff performed all duties and responsibilities of Counsel, Technology Intellectual Property, reporting to the Senior Counsel for Global Intellectual Property, Lois Duquette ("Duquette"), and received solid performance reviews and raises annually in that position, and throughout his entire employment with Defendant.

16. After Duquette's retirement in August of 2015, Defendant interviewed at least 2 external candidates for the position of Senior Counsel for Global Intellectual Property, in compliance with its policies for high-level positions, following which Plaintiff was invited by Defendant to apply for the position.

17. On or about February 2016, Defendant, through a law leadership committee including at least Adrian Mebane ("Mebane") and Matt Ryan ("Ryan"), informed Plaintiff that "the Committee had unanimously awarded" Plaintiff the position of Senior Counsel for Global Intellectual Property.

18. The Hershey Chocolate & Confectionery Company ("HCCC") is wholly owned by Defendant, with officers and board members that include only employees of Defendant.

19. HCCC owns a large number of trademarks that are licensed to Defendant to allow Defendant to use the trademarks in its international manufacturing and sales operations.

20. During his employment, Defendant instructed Plaintiff to assume certain responsibilities for HCCC and Plaintiff complied.

21. Defendant never paid or otherwise compensated Plaintiff for the additional responsibilities of the HCCC position, nor for continuing his responsibilities as the acting Counsel, Technology Intellectual Property.

22. Defendant assigned Plaintiff several officer titles and signatory authority for The Hershey Company and HCCC during Plaintiff's tenure of employment with Defendant, and instructed Plaintiff to execute contracts, Intellectual Property applications and declarations, and other documents.

Plaintiff followed those instructions to further the best interests of both companies.

23. Plaintiff held all responsibility globally for Defendant's Intellectual Property and other related legal issues, covering the only three Intellectual Property attorney positions for Defendant and its affiliates through the effective date of the termination of his employment, including responsibility for more than 10,000 trademarks and 100 patents and applications, and key trade secrets of Defendant's iconic branded candy empire, including budget and expenditure for all Intellectual Property-related tasks, globally.

24. In addition to his position as Senior Counsel for Global Intellectual Property, Plaintiff was the sole attorney for the Information Technology department, and the primary attorney contact for Defendant's Research & Development, Innovation, Food Service, and Licensing departments.

25. In each annual performance review, Plaintiff was rated no lower than "meets expectations" – a high ranking within Defendant's competitive compressed ratings systems.

26. On Monday, October 2, 2017 Plaintiff went to the office of Mebane for a regularly scheduled meeting to review significant IP tasks, issues, and workload.

27. Esther Read ("Read") from Defendant's Office of Human Resources was with Mebane.

28. Mebane told Plaintiff that "The Company has decided to eliminate your position, effective December 29, 2017."

29. In response to Mebane's invitation for comment, Plaintiff expressed his opinion that Defendant's decision to eliminate his position was completely unexpected and confusing, and that it put Defendant in a dangerous position by leaving it with no in-house Intellectual Property attorney, globally.

30. Plaintiff also reminded Mebane and Read of his experience and demonstrated ability, even under duress of covering three positions.

31. Mebane asked Plaintiff to "be a cooperative IP team member, and to work with us through December 29, 2017."

32. Mebane offered that Plaintiff could take some time, and then further react and comment, if desired, but that the decision to eliminate his position had been made and was final.

33. Mebane then asked Read to meet with Plaintiff in Plaintiff's office to go over a severance package that Defendant planned to offer him.

34. Read presented and described proposed severance package terms that would be available only if Plaintiff signed a Severance Agreement, and indicated that the proposed Severance Agreement would be ready within a few days.

35. Plaintiff left his meetings with Mebane and Read with the clear understanding that Defendant had eliminated his position, and he had no reason to doubt the truth of Mebane and Read's representations to that effect.

36. On Monday, October 9, 2017 Plaintiff reported to his office and commenced working. At approximately 9:45 a.m., Plaintiff received a telephone call from Mebane, who was not in the office. Mebane asked "are you at the office?" Plaintiff answered "Yes, I am working quietly with my door closed. I have hundreds of emails." Mebane then asked "Can you leave and work remote? How soon? By 10 a.m.?" Plaintiff was surprised, but agreed to gather work and take it by 10 a.m.

37. Minutes later, Ryan knocked on Plaintiff's office door and opened it, and sternly asked "Are you still here? Are you going?" Plaintiff answered, "I just got a call from Adrian minutes ago and agreed to go since he asked me to." Ryan acknowledged, looked at his watch, and said "10 o'clock?" Plaintiff nodded, and Ryan closed the door.

38. Plaintiff immediately divided his office into two piles – Defendant's property, and his Plaintiff's property, and left carrying as much of his own property as he could.

39. Plaintiff was never allowed to step foot into his Hershey office again.

40. On or about Friday October 13, 2017, Mebane called Plaintiff and told him that "We didn't want you to be surprised, but we have revoked your site access, your access badge, and your email access. You will be placed on Administrative Leave, and do not need to report to work or do any work. You will be paid on Administrative Leave through December 29, 2017."

41. Mebane also asked Plaintiff to await the Severance Agreement, and to work with Robert Sandkuhler ("Sandkuhler"), an attorney in Defendant's Law Department, as the sole contact for any issues with the Severance Agreement or anything else involving Defendant.

42. From October 18 through November 24, 2017, Plaintiff, Read and Sandkuhler worked to review, revise, and execute the Severance Agreement.

43. Plaintiff agreed and signed the Severance Agreement in full reliance on Defendant's statements and representations that Plaintiff's position was being eliminated. A true and correct copy of the Severance Agreement is attached hereto as **"Exhibit A"**.

44. Plaintiff would not have signed the Severance Agreement had he known or had any reason to believe that Defendant's statements and representations were false or misleading.

45. Plaintiff had joined Defendant in 2013 based on his reasonable expectations that Defendant would be truthful and lawful in its dealings with him.

9

46. On or about March 7, 2018, less than 3 months after the Severance Date of December 29, 2017, Plaintiff learned that Defendant had hired a Head of Intellectual Property.

47. On or about March 8, 2017 Plaintiff located and preserved the Linked-In profile of Dinisia Hardly Folmar ("Folmar"), whose profile clearly announces her as Head of Intellectual Property at The Hershey Company.

48. Folmar's profile shows that: she is a Trademark Attorney and not a Licensed Registered Patent attorney; she is female; she is African-American; and she is under 40 years old.

49. Folmar's profile also shows that she worked at Coca-Cola from 2006-2015, where Defendant's then General Counsel Leslie Turner, also a female African-American, worked as General Counsel until December 2012.

50. Folmar and Turner's careers at Coca Cola's law department overlapped, and it is averred that Folmar and Turner knew each other and were involved in many of the same activities, including diversity committees and minority professional associations.

51. Plaintiff was stunned to learn of Defendant's hire of a Head of Intellectual Property and the false nature of Defendant's representations to him.

52. Defendant's termination of Plaintiff's employment occurred contemporaneously, systematically, concomitantly, and intentionally with

Defendant's recruitment and hiring of Folmar to take his former position, which had not been eliminated.

53. Upon information and belief, the Administrative Leave on which Plaintiff was placed was orchestrated by Defendant to prevent Plaintiff's discovery of Defendant's illegal and discriminatory acts.

54. Defendant did not ever notify or mention to Plaintiff the position of Head of Intellectual Property.

55. Defendant did not invite Plaintiff to apply for the position of Head of Intellectual Property, as Defendant had expressly done into 2016 when Defendant canvassed externally, invited Plaintiff to apply, and then unanimously awarded Plaintiff the position of Senior Counsel for Global Intellectual Property.

56. In his role at Defendant from January 2016 through December 29, 2017, Plaintiff clearly was the global head of intellectual property, performing every role of the only Intellectual Property attorney positions within Defendant company, and supervising domestic and foreign law employees and contractors to manage all Intellectual Property legal activities for Defendant and HCCC, globally.

57. The position of Head of Intellectual Property is the same position Plaintiff held and performed as Senior Counsel for Global Intellectual Property.

58. Defendant's termination of Plaintiff's employment was to enable Defendant to increase its diversity – a highly promoted internal and publicly promoted objective of Defendant during Plaintiff's tenure – by eliminating an older Caucasian male attorney and replacing him with a younger African American female attorney.

59. During the time that Plaintiff was employed by Defendant, it also terminated the employment of other Caucasians over the age of 40. Plaintiff believes and therefore avers that Defendant intentionally and systematically terminated employees who were older and Caucasian consistent with its diversity goals.

60. Defendant's objective of "diversity" is well-advertised and constantly promoted by Defendant. For example, Defendant named 2017 the "Year of the Woman", and promoted itself as "HERshey" in campaigns highlighting only its women employees and officers in large posters, social media, and elsewhere.

## COUNT I

## FRAUDULENT INDUCEMENT

61. Each and every preceding paragraph of this Complaint is incorporated herein by reference as if the same were more fully set forth herein.

62. Under Pennsylvania law, a claim for fraudulent inducement encompasses the same elements as a claim for common law fraud, but also

requires an additional element – that the misrepresentation at issue was made with specific intent to induce another to enter into a contract when the person had no duty to enter into the contract.

63. Under Pennsylvania law, inducing another to enter into a contract by means of fraud or a material misrepresentation, when the other party was under no duty to enter into the contract, is a key element of a claim for fraudulent inducement. The misrepresentation must be made knowingly. In determining whether there is a misrepresentation, the law equates concealment of a fact with an affirmative assertion. In certain instances, non-disclosure, as opposed to concealment, is equated with an affirmative assertion. When all the necessary factors, factual misrepresentation, materiality, reasonable reliance, etc. are shown, the contract becomes voidable and may be rescinded for fraudulent inducement.

64. Defendant knowingly misrepresented to Plaintiff that it was eliminating the position of Senior Counsel for Global Intellectual Property to induce Plaintiff to accept termination of his employment and to enter into a Severance Agreement.

65. Defendant knowingly made misrepresentations to and concealed facts from Plaintiff, including but not limited to its:

    a. representations to Plaintiff that his position as Senior Counsel for Global Intellectual Property was being eliminated;

      b. plan to create and fill the Head of Intellectual Property position with Folmar;

      c. recruitment of and communications with Folmar;

      d. use of the Administrative Leave against Plaintiff to maintain concealment; and

      e. use of the non-public process of creating and filling a position of Head of Intellectual Property.

66.     Plaintiff expressly relied upon Defendant's knowing misrepresentation of facts, and he would never have signed the Severance Agreement had he known of the falsity of the representations and/or of the concealed activities of Defendant.

67.     Plaintiff was under no contractual or other duty to Defendant to sign the Severance Agreement.

68.     The release provisions in the Severance Agreement are null and void, or voidable at Plaintiff's option to rescind, which Plaintiff hereby exercises, by virtue of Defendant's fraudulent inducement of Plaintiff to execute the Severance Agreement.

69.     Plaintiff submits that the rescindment and/or voiding of the Severance Agreement voids any and all terms thereof, including all releases therein, and permits Plaintiff to proceed with the remaining counts herein seeking remedy for

Defendant's illegal and discriminatory treatment of Plaintiff and the resulting damages suffered by Plaintiff.

**WHEREFORE**, Plaintiff Kurt Ehresman requests that this Court enter judgment in his favor and against Defendant for compensatory, consequential and/or incidental damages, together with interest, attorney's fees, costs and any other relief the Court may deem just and proper.

## COUNT II

## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 951-963

70. Each and every preceding paragraph of this Complaint is incorporated herein by reference as if the same were more fully set forth herein.

71. Plaintiff believes, and therefore avers, that Defendant's actions, as more fully set forth above, were taken due to Plaintiff's protected class as a Caucasian, male, over the age of 40 (Plaintiff was age 51 at the time of his termination).

72. Plaintiff believes, and therefore avers, that Defendant terminated Plaintiff because he is Caucasian, male and over the age of 50.

73. Based upon the foregoing, Plaintiff alleges that Defendant violated Section 5 of the Pennsylvania Human Relations Act, 43 P.S. § 951-963, et seq.

74. Based upon the foregoing, Plaintiff requests that Defendant be required to provide all appropriate remedies under Section 9 on of Pennsylvania Human Relations Act.

**WHEREFORE**, Plaintiff Kurt Ehresman requests that this Court enter judgment in his favor and against Defendant for compensatory, consequential and/or incidental damages, together with interest, attorney's fees, costs and any other relief the Court may deem just and proper.

## COUNT III

### VIOLATION OF 42 U.S.C §§ 2000e to 2000e-17
### (race, color, gender)

75. Each and every preceding paragraph of this Complaint is incorporated herein by reference as if the same were more fully set forth herein.

76. Plaintiff believes, and therefore avers, that Defendant's actions, as more fully set forth above, were due to Plaintiff's protected class as a Caucasian and a male.

77. Plaintiff believes, and therefore avers, that Defendant terminated Plaintiff because he is Caucasian and male.

78. Based upon the foregoing, Plaintiff alleges that Defendant violated 42 U.S.C. § 2000a, et seq.

79. Based upon the foregoing, Plaintiff requests that Defendant be required to provide all appropriate remedies for violation of 42 U.S.C. § 2000a, et seq.

**WHEREFORE**, Plaintiff Kurt Ehresman requests that this Court enter judgment in his favor and against Defendant for compensatory, consequential and/or incidental damages, together with interest, attorney's fees, costs and any other relief the Court may deem just and proper.

## COUNT IV

## VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967
## 29 U.S.C. §§ 621 to 634

80. Each and every preceding paragraph of this Complaint is incorporated herein by reference as if the same were more fully set forth herein.

81. Plaintiff believes, and therefore avers, that Defendant's actions, as more fully set forth above, were due to Plaintiff's protected class as an employee over age 40, namely age 51 at the time of his termination.

82. Plaintiff believes, and therefore avers, that Defendant terminated Plaintiff because he is over the age of 50.

83. Based upon the foregoing, Plaintiff alleges that Defendant violated 29 U.S.C. §§ 621 to 634 et seq.

84. Based upon the foregoing, Plaintiff requests that Defendant be required to provide all appropriate remedies for violation of 29 U.S.C. §§ 621 to 634 et seq.

**WHEREFORE**, Plaintiff Kurt Ehresman requests that this Court enter judgment in his favor and against Defendant for compensatory, consequential and/or incidental damages, together with interest, attorney's fees, costs and any other relief the Court may deem just and proper.

                                      Respectfully submitted,
                                      **SMIGEL, ANDERSON & SACKS, LLP**

Date: February 6, 2019        By: *[signature]*
                                         Michael R. Kelley, Esquire – ID # 58854
                                         Wendell V. Courtney, Esquire – ID # 32103
                                         4431 North Front Street
                                         Harrisburg, PA 17110
                                         (717) 234-2401
                                         *Attorneys for Plaintiff*