# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KURT L. EHRESMAN, *Plaintiff*, v. THE HERSHEY COMPANY, *Defendant*. | Case No. 19-cv-00212 Judge Sylvia H. Rambo Electronically filed |

## DEFENDANT THE HERSHEY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Dated: April 9, 2019

Michael S. Burkhardt (PA 68072)
Michael J. Puma (PA 94463) (admitted *pro hac vice*)
Eric C. Kim (PA 316245) (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel.: 215.963.5000
Fax: 215.963.5001

*Counsel for Defendant*

# **TABLE OF CONTENTS**

**Page**

I.       INTRODUCTION ......................................................................1

II.      STATEMENT OF FACTUAL ALLEGATIONS.......................3

     A.      Hershey Terminated Plaintiff's Employment Pursuant to a
            Restructuring ................................................................3

     B.      Plaintiff Signed the Broad and Clear Severance Agreement after
            Extensive Negotiations with Hershey ..................................4

III.     QUESTION PRESENTED .......................................................6

IV.      ARGUMENT..........................................................................6

     A.      Plaintiff Bears the Burden to Plead "Plausible" Claims ....................6

     B.      Plaintiff's Claims Are Barred by the General Release. .......................7

     C.      Plaintiff's Allegations of Fraudulent Inducement Cannot
            Invalidate the Agreement ................................................12

V.       CONCLUSION ....................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allied Erecting & Dismantling Co. v. USX Corp.*,
  249 F.3d 191 (3d Cir. 2001) ...............................................................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................6, 7

*Bickings v. Bethlehem Lukens Plate*,
  82 F. Supp. 2d 402 (E.D. Pa. 2000)......................................13, 14, 15

*Bowman v. Meadow Ridge, Inc.*,
  615 A.2d 755 (Pa. 1992) ...................................................................17

*Chaganti v. Ceridian Benefits*,
  No. 03-05785, 2004 U.S. Dist. LEXIS 17075 (N.D. Cal. Aug. 23,
  2004) .............................................................................................16

*Claxton v. Bowes*,
  No. 12-0492, 2013 U.S. Dist. LEXIS 42741 (E.D. Wash. Mar. 26,
  2013) .............................................................................................16

*Coventry v. U. S. Steel Corp.*,
  856 F.2d 514 (3d Cir. 1988) ...........................................................7, 8

*Cuchara v. Gai-Tronics Corp.*,
  129 F. App'x 728 (3d Cir. 2005) ....................................................9, 20

*Culver v. U.S. Dep't of Labor Occupational Safety & Health Admin.*,
  No. 06-438, 2006 WL 3199138 (M.D. Pa. Nov. 3, 2006)...................18

*Eigen v. Textron Lycoming Reciprocating Engine Div.*,
  874 A.2d 1179 (Pa. Super. Ct. 2005).................................................18

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007) .............................................................19

*Gregory v. Derry Twp. Sch. Dist.*,
  No. 09-00780, 2010 WL 146332 (M.D. Pa. Jan. 11, 2010) (Rambo,
  J.), *aff'd*, 418 F. App'x 148 (3d Cir. 2011)...........................................7, 9, 10, 11

*Hess v. Evans*,
  431 A.2d 347 (Pa. 1981) ..............................................................................20, 21

*Holt v. Dep't of Pub. Welfare*,
  678 A.2d 421 (Pa. Commw. 1996) .....................................................................7

*Hughes v. United Parcel Serv., Inc.*,
  639 F. App'x 99 (3d Cir. 2016) ..........................................................................7

*Interwave Tech., Inc. v. Rockwell Automation, Inc.*,
  No. 05-398, 2005 WL 3605272 (E.D. Pa. 2005)..............................................17

*MacKay v. Donovan*,
  No. 10-218, 2011 WL 2604339 (E.D. Pa. July 1, 2011) ...................................14

*Magpiong v. Superdry Retail LLC*,
  304 F. Supp. 3d 983, 990 (D. Nev. 2018)....................................................14, 16

*McFarlin v. Gormley*,
  No. 06-1594, 2008 U.S. Dist. LEXIS 10541 (D. Or. Feb. 12, 2008) ................16

*Nayak v. Voith Turbo, Inc.*,
  No. 14-01053, 2017 WL 9485536 (M.D. Pa. July 19, 2017)............................20

*Neitzke v. Williams*,
  490 U.S. 319 (1989)............................................................................................6

*Three Rivers Motor Co. v. Ford Motors Co.*,
  522 F.2d 885 (3d Cir. 1975) ....................................................................7, 13, 18

*Toy v. Metro. Life Ins.*
  Co., 928 A.2d 186, 204-06 (Pa. 2007)..............................................................17

*Warren v. Mastery Charter Sch.*,
  312 F. Supp. 3d 456, 465 (E.D. Pa. 2018).........................................................10

*Winters v. Inv. Sav. Plan for Emps. of Knight-Ridder, Inc.*,
  174 F. Supp. 2d 259 (E.D. Pa. 2001), *aff'd.*, 47 F. App'x 143 (3d
  Cir. 2002) ....................................................................................................13, 14

iii

*Yassan v. J.P. Morgan Chase & Co.*,
   708 F.3d 963 (7th Cir. 2013) ...............................................................14, 15, 16

**STATUTES**

29 U.S.C. § 626 (f)(1)(A)–(H) ...................................................................................8

29 U.S.C. § 626(f)(1)(A)-(H) ..................................................................................12

ADEA ....................................................................................................................8, 11

Age Discrimination in Employment Act ...................................................................2

Civil Rights Act of 1964 Title VII ............................................................................1

COBRA .............................................................................................................4, 5, 6

OWBPA ........................................................................................................6, 8, 11

Pennsylvania Human Relations Act .........................................................................1

**OTHER AUTHORITIES**

Rule 9(b) ..................................................................................................................19

Rule 12(b)(6) .............................................................................................................6

I. **INTRODUCTION**

Plaintiff Kurt Ehresman ("Plaintiff") voluntarily signed a comprehensive release agreement in exchange for over $100,000 in separation pay but now improperly sues The Hershey Company ("Hershey" or "the Company") for plainly released claims.  His Complaint should be dismissed.

In October 2017, Hershey informed Plaintiff (then an in-house lawyer) that it was terminating his employment pursuant to a restructuring of its Intellectual Property ("IP") Department.  Hershey then presented Plaintiff with a proposed Confidential Separation Agreement and General Release (the "Severance Agreement" or "Agreement"), which offered Plaintiff generous severance benefits (including a lump sum over $100,000) in exchange for a full release of all known and unknown claims related to his employment, among other terms.  Over the next month, Plaintiff took full advantage of his training as an attorney to negotiate the terms of the Agreement, before signing it in November 2017.

Despite agreeing to a general release in the Severance Agreement and receiving significant consideration, Plaintiff now claims that the Agreement is invalid and that Hershey terminated him for being a 51-year-old Caucasian man. Specifically, the Complaint alleges a claim of fraudulent inducement (Count I); race, age, and gender discrimination under the Pennsylvania Human Relations Act (Count II); race, color, and gender discrimination under Title VII of the Civil

Rights Act of 1964 (Count III); and age discrimination under the Age

Discrimination in Employment Act ("ADEA") (Count IV). All of these claims are

barred by the Agreement's release, which Plaintiff does not dispute.

The gravamen of the Complaint is Plaintiff's allegation that Hershey

induced him to sign the Agreement by purportedly misrepresenting the reason for

his termination. According to Plaintiff, Hershey wanted to replace him with a

younger, African-American woman. Plaintiff's claims fail as matter of law for

several reasons. First and foremost, Plaintiff knowingly and voluntarily agreed to

a release that explicitly waives all claims related to his employment, including

unknown claims that accrued before he signed the Agreement.

Moreover, Plaintiff cannot circumvent that valid release with his fraudulent

inducement claim because Pennsylvania law enforces releases of unknown claims

just like the one that Plaintiff signed. Courts also have consistently held that

employees cannot use a purported misrepresentation about a termination as a basis

to invalidate a severance agreement that releases unknown claims. In any event,

Plaintiff has not pled and cannot plead all of the elements of fraudulent inducement

with the required specificity. The fraud claim also fails as a matter of law because

it is based on impermissible parol evidence, and because Plaintiff never returned

the consideration he received for the Agreement, as required by Pennsylvania law.

If Plaintiff could void his Severance Agreement based on nothing more than his belief that Hershey misrepresented the grounds for his termination, virtually every separation agreement would be exposed to attack and the certainty of release agreements that promotes settlement of claims and relieves courts of significant burdens would be lost.  For all of these reasons, and as more fully explained below, Hershey respectfully requests that the Court dismiss the Complaint, with prejudice, in its entirety.

## II.  STATEMENT OF FACTUAL ALLEGATIONS[1]

### A.  Hershey Terminated Plaintiff's Employment Pursuant to a Restructuring.

Plaintiff has been an attorney for over twenty years and was hired by Hershey for the Counsel, Technology IP position on August 23, 2013.  Compl. ¶¶ 7-9.  In this role, Plaintiff helped oversee the Company's intellectual property and reviewed contracts.  *Id.* ¶¶ 23-24.  On or about October 2, 2017, Hershey informed Plaintiff that his position was being eliminated effective December 29, 2017, pursuant to a restructuring of the IP Department.  *Id.* ¶ 28.  One other attorney in the IP Department was also being terminated, and that individual was 38 years old

---

[1]  For purposes of this Motion only, Hershey treats the allegations in the Complaint as true.  Hershey reserves the right to dispute the accuracy of those facts in subsequent pleadings if necessary.

at the time.  *See* Agreement, attached as Exhibit A to the Complaint ("Ex. A"), at Ex. C.

Hershey then presented Plaintiff with the proposed Severance Agreement for his review and input, but noted that the decision to eliminate his position was final. *Id.* ¶¶ 32-35.  In mid-October, Hershey informed Plaintiff that he would be placed on paid administrative leave through December 29, 2017, regardless of whether he executed the Severance Agreement.  *Id.* ¶ 40.

**B.  Plaintiff Signed the Broad and Clear Severance Agreement after Extensive Negotiations with Hershey.**

For over a month, Plaintiff and Hershey negotiated the Severance Agreement.  *Id.* ¶ 42.  Plaintiff executed the final version of the Agreement on November 16, 2017.  Ex. A.

**1.  The Agreement provided Plaintiff generous consideration.**

The Agreement stated that if Plaintiff chose to enter into the Agreement and not revoke it, he would be entitled to severance benefits of twenty-six weeks' pay—or $100,238.45—and other COBRA, stock and incentive benefits, which were "in addition to and above any benefits or other payment to which you are entitled under any Hershey policy, benefits plan or by law."  Ex. A, ¶ 4.

**2.  The Agreement contains a clear general release of all known and unknown claims.**

In exchange for these benefits, Plaintiff released all legally waivable claims, demands, or actions against Hershey as follows:

-4-

a.      You agree to release and hereby do release the Company from liability for any and all legally waivable claims, demands, or actions you may have against the Company or its agents of whatever kind including, but not limited to, ***those related to your employment by Hershey, the termination of that employment*** . . . . ***You hereby agree and acknowledge that you are not entitled to receive, and that Hershey would not have granted you, the Severance Benefits without your releasing the Company from liability for each and every claim covered by this general release***. . . .

b.      You agree that to the fullest extent permitted by law, this general release covers, but is not limited to: (1) claims for monetary damages arising under the ***Age Discrimination in Employment Act ("ADEA")***, the Older Workers Benefit Protection Act ("OWBPA"), ***Title VII of the Civil Rights Act of 1964 ("Title VII")***, . . . the ***Pennsylvania Human Relations Act ("PHRA")***, and any other federal, state or local law concerning the employment relationship that is applicable to you . . . . You also agree that this general release covers, but is not limited to, claims based on theories of contract or tort, whether based on common law or otherwise.

c.      This general release covers both claims you know about and ***those you may not know*** about that have accrued as of the time you sign this Agreement. In this regard, you agree to waive all rights that any state or local law may provide with respect to a general release of unknown claims. ***<u>You understand that you may later discover facts different from what you now believe to be true, which if known, could have materially affected this Agreement, but you nevertheless waive any claims or rights based on additional facts.</u>***

Ex. A, § 5 (emphasis added).

### 3.      Plaintiff was provided sufficient time to review the Agreement and advised to consult with an attorney.

Plaintiff "entered into this Severance Agreement freely, knowingly, and voluntarily" and he "underst[ood] the meaning and effect of this Agreement." Ex. A, ¶ 14. Plaintiff further acknowledged that he was "advised to consult an attorney before signing this Agreement." *Id.* Moreover, Hershey gave Plaintiff forty-five

days to decide whether to sign the Agreement and an additional seven days following his execution of the Agreement to revoke it.  *Id.*

> **4.    The Agreement outlined all individuals who could have been affected by Hershey's restructuring.**

Pursuant to the OWBPA, the Agreement also contained a disclosure outlining the job title, pay band, and age of all individuals who could have been affected by the reorganization.  Ex. A at Ex. C.  This disclosure contained a chart indicating that two attorneys in the IP Department were being displaced, including Plaintiff and another attorney who was 38 years old at the time.  *Id.*

## III.    QUESTION PRESENTED

> **(1)    Whether the Complaint should be dismissed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) because Plaintiff knowingly and willingly executed the Agreement and released all claims.**

## IV.    ARGUMENT

### A.    Plaintiff Bears the Burden to Plead "Plausible" Claims.

The purpose of Rule 12(b)(6) is to eliminate baseless claims.  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  When, as here, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  A plaintiff's obligation to provide the grounds for his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Id.* at 545.  Rather, to survive a motion to

dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible

on its face." *Id.* at 547.

As a threshold matter, by attaching the Agreement to his Complaint, Plaintiff

incorporated it into the pleading.  *See Hughes v. United Parcel Serv., Inc.*, 639 F.

App'x 99, 103 (3d Cir. 2016).  Accordingly, this Court may rely on the Agreement in

ruling on this Motion.

### B.     Plaintiff's Claims Are Barred by the General Release.

It is well settled that, when construing the terms of a release such as the one

at issue here, federal courts in Pennsylvania are guided by Pennsylvania law.[2]

*Three Rivers Motor Co. v. Ford Motors Co*., 522 F.2d 885, 892 (3d Cir. 1975).

Pursuant to Pennsylvania law, the effect of a release must be determined from the

ordinary meaning of its language.  *Holt v. Dep't of Pub. Welfare,* 678 A.2d 421,

(Pa. Commw. 1996).  The intent of the parties to a contract must be determined

solely from the express language in the contract. *Id.*

This Court as well as the Third Circuit has held that employees may waive

employment discrimination claims so long as the waiver is made "knowingly and

willfully." *Coventry v. U. S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988);

*Gregory v. Derry Twp. Sch. Dist.*, No. 09-00780, 2010 WL 146332, at *5 (M.D.

---

[2]     The Agreement also states that Pennsylvania law shall govern.  Ex. A, § 17.

Pa. Jan. 11, 2010) (Rambo, J.), *aff'd*, 418 F. App'x 148 (3d Cir. 2011). To determine whether a release is valid, Pennsylvania courts apply a totality of the circumstances test, which considers:

(1)   the clarity and specificity of the release language;

(2)   the plaintiff's education and business experience;

(3)   the amount of time the plaintiff had for deliberation about the release before signing it;

(4)   whether the plaintiff knew or should have known his rights upon execution of the release;

(5)   whether the plaintiff was encouraged to seek or actually received benefit of counsel;

(6)   whether there was an opportunity to negotiate the terms of the release; and

(7)   whether the consideration given in exchange for the release and accepted by the plaintiff exceeds the benefits to which the plaintiff was already entitled by contract or law.

*Coventry*, 856 F.2d at 522-23.

Similarly, the OWBPA mandates that any release of ADEA claims must be "knowing and voluntary." To that end, a release must satisfy the statutory requirements set forth in 29 U.S.C. § 626 (f)(1)(A)–(H), which largely track the elements of the totality of the circumstances test outlined in *Coventry*.

Here, the totality of circumstances compel enforcement of the Agreement's general release. Furthermore, Plaintiff does not and cannot claim that the OWBPA's requirements for ADEA releases are not met.

### 1.    The clarity and specificity of the Agreement favors enforcement.

The Agreement's language is clear, specific, and easily understandable. Moreover, it is beyond dispute that the Agreement's general release covers all of the claims brought in the Complaint. The Agreement also states in a separate subsection that Plaintiff is agreeing to waive known ***and unknown*** claims. Ex. A, § 5(c).

This Court and others have held that similar language is sufficiently clear and unambiguous under the totality of the circumstances test. *See Gregory*, 2010 WL 146332, at *5 (enforcing severance agreement with general release that "lists specific claims [plaintiff] would be releasing"); *Cuchara v. Gai-Tronics Corp.*, 129 F. App'x 728, 731 (3d Cir. 2005) (affirming dismissal of discrimination and fraudulent inducement claims, because "[t]he Release was clear and specific"). Thus, the first factor weighs in favor of enforcement.

### 2.    Plaintiff's experience as an attorney favors enforcement of the Agreement.

As an attorney, experienced with "execut[ing] contracts," Plaintiff possessed the education, experience, and intelligence to understand the significance of the Agreement and its release. Compl. ¶¶ 7, 23, 25, 30, 35, 42. Throughout the Complaint, Plaintiff highlights his experience and sophistication, which illustrates his competence to understand the Agreement. *Id*. In fact, Plaintiff was better

positioned to understand the Agreement than other highly educated plaintiffs in cases in which releases were enforced. *See Gregory,* 2010 WL 146332, at *5 (holding that plaintiff's "bachelor's degree in English and a master's degree from Syracuse University" favored enforcement of release); *Warren v. Mastery Charter Sch.*, 312 F. Supp. 3d 456, 465 (E.D. Pa. 2018) (dismissing claim pursuant to release for plaintiff with master's degree). Accordingly, this factor heavily favors enforcement.

### 3. The amount of time Plaintiff had to deliberate the Agreement favors enforcement.

Plaintiff had months to review, revise and then further consider the Agreement, and even time to revoke it after he executed it. Specifically, Plaintiff admits that "[f]rom October 18 through November 24, 2017, Plaintiff worked to review, revise, and execute the Severance Agreement." Compl. ¶ 42. The Agreement itself gave Plaintiff another forty-five days to consider its terms, and another seven days after signing it to revoke it. Ex. A, § 14. Accordingly, this favor also favors enforcement.

### 4. Plaintiff understood his legal rights.

Because Plaintiff is an experienced attorney and negotiated the language of the Agreement that is plain and easily understandable, there can be no good-faith dispute that he knew his rights prior to and upon executing the Agreement.

**5.      Plaintiff had the opportunity to obtain advice from legal counsel (besides himself) and was invited to do so before signing the Agreement.**

Notwithstanding Plaintiff's status as an attorney, Hershey specifically advised Plaintiff to review the Agreement with another attorney of his choosing prior to signing it.  Ex. A, § 14.  Thus, this factor also favors enforcement.

**6.      Plaintiff had the opportunity to and did in fact negotiate the terms of the Agreement.**

Plaintiff admits that he had an opportunity to negotiate the terms of the release, and acknowledges that he spent several weeks reviewing and revising its terms.  Compl. ¶ 42.  Thus, this factor also favors enforcement.

**7.      Plaintiff received valuable consideration in exchange for executing the Agreement.**

Plaintiff received significant compensation and benefits that totaled well over $100,000, which he would not have been entitled to receive unless he signed the Agreement.  Ex. A, § 4.  Courts have found there to be valid consideration where plaintiffs received significantly less compensation and benefits.  *See, e.g.*, *Gregory*, 2010 WL 146332, at *5 (finding $24,000 to be valid consideration for a release).

**8.      Plaintiff's ADEA release complies with the OWBPA.**

As noted above, the OWBPA's requirements for an ADEA release to be knowing and voluntary largely track the factors considered under *Coventry*'s totality of the circumstances test.  However, the OWBPA also requires employers

to provide: certain disclosures for group terminations (e.g., ages and job titles of all

other employees considered and selected for termination), forty-five days to

consider a release, and seven days to revoke a release after it is executed.  29

U.S.C. § 626(f)(1)(A)-(H).  Plaintiff does not and cannot dispute that all of those

requirements are also met.

### C.    Plaintiff's Allegations of Fraudulent Inducement Cannot Invalidate the Agreement.

Despite the fact that Plaintiff's own allegations make it clear that he

knowingly and willingly signed the Agreement, Plaintiff now claims the

Agreement is invalid because Hershey fraudulently induced him to sign it.  Compl.

¶¶ 61-69.  Specifically, he claims that Hershey committed fraud by telling him that

his position was being eliminated when, according to Plaintiff, Hershey actually

just wanted to replace him with a younger, African-American woman.  *Id.*

Even assuming that these allegations are true, which they are not,[3] Plaintiff's

fraudulent inducement theory cannot invalidate the Agreement because it fails as a

matter of law for multiple independent reasons.

---

[3]      For example, while not relevant for this Motion, Plaintiff's claims that he
was replaced by someone under the age of 40 (Ms. Folmar) is not true, and neither
is his claim that Hershey hired Ms. Folmar for the same position he held.

**1.    Plaintiff's agreement to release all known and *unknown* claims precludes the fraudulent inducement claim.**

Plaintiff's claim that "he never would have signed the Severance Agreement had he known of the [alleged] falsity of the representation" regarding his termination is insufficient as a matter of law to sustain a fraudulent inducement claim.  It is well-established under Pennsylvania law that a release barring unknown claims will be enforced, even if a party alleges that it was unaware of the matters being released before executing it.  *See, e.g., Three Rivers Motors,* 522 F.2d at 895-96.  Indeed, releases of unknown claims have been enforced to specifically bar fraud and discrimination claims.  *See, e.g.*, *Winters v. Inv. Sav. Plan for Emps. of Knight-Ridder, Inc.*, 174 F. Supp. 2d 259, 263 (E.D. Pa. 2001) (holding that plaintiff released fraudulent inducement claims through a release of "known or unknown" claims), *aff'd.*, 47 F. App'x 143 (3d Cir. 2002); *Bickings v. Bethlehem Lukens Plate,* 82 F. Supp. 2d 402, 409 (E.D. Pa. 2000) (holding that discrimination claim is barred, even if plaintiff was unaware that the claim could exist at the time he signed the release, because the release covered "unknown" claims).

Here, the Agreement's release explicitly states that it "covers both claims you know about and those you may not know about that have accrued as of the time you sign this Agreement." Ex. A, § 5(c).  It further states that "[y]ou understand that you may later discover facts different from what you now believe

to be true, which if known, could have materially affected this Agreement, but you nevertheless waive any claims or rights based on additional facts." *Id.* Thus, the fact that Plaintiff purportedly did not know the full extent of the claims he now believes are available to him is immaterial because he knowingly and willing released all unknown claims, including his discrimination and fraudulent inducement claims.

Plaintiff cannot circumvent his valid waiver of unknown claims by simply alleging fraudulent inducement, which would expose every settlement and separation agreement to attack. When a general release specifically waives the right to bring ***unknown*** claims, courts in this jurisdiction and others have consistently held that a fraudulent inducement claim seeking to invalidate the release must allege a "***separate fraud from the subject of the release***." *See Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 974 (7th Cir. 2013); *Magpiong v. Superdry Retail LLC*, 304 F. Supp. 3d 983, 990 (D. Nev. 2018); *MacKay v. Donovan*, No. 10-218, 2011 WL 2604339, at *4 (E.D. Pa. July 1, 2011) (applying Pennsylvania law and holding that a fraudulent inducement claim is barred by a release covering unknown claims because it "fails to allege facts to support a finding that a ***separate act of fraud*** [besides the matter covered in the agreement] induced them to enter into the Settlement Agreement" (emphasis added)); *Winters*, 174 F. Supp. 2d at 262-263 (dismissing fraudulent inducement claim because, *inter*

*alia*, "plaintiff's contention that defendants' committed fraudulent acts to facilitate a settlement [in a prior matter] only demonstrates that the fraudulent conduct arose from the [prior matter]. . . . [therefore,] plaintiff's claim of fraud [is] waived").

The Seventh Circuit in *Yassan*, applying New York law,[4] addressed nearly identical facts to the present case on a motion to dismiss. 708 F.3d at 975. There, the plaintiff alleged that the defendant informed him that he was being terminated due to "lack of work." *Id.* at 966. The parties entered into a severance agreement that included a broad release of all known and *unknown* claims. *Id.* at 973-74. Thereafter, the plaintiff filed suit alleging age discrimination and fraudulent inducement on the grounds that defendant misrepresented the reason for his termination. The Seventh Circuit affirmed the district court's dismissal and held as follows:

> Chase gave Yassan a severance package solely in return for his agreement to waive all claims against Chase, including 'claims he kn[e]w about ***and claims [he did] not know about.***' There was no other reason for Chase to pay Yassan six months' salary after his termination. Yassan knew this when he signed the release. Chase may have misrepresented its reasons for terminating Yassan, and Chase may have had ulterior motives for terminating Yassan. But Yassan explicitly released Chase from all tort claims, including fraud. Yassan should have considered the possibility that Chase was lying to him before he

---

[4]      Pennsylvania and New York law both favor enforceability of releases with respect to unknown or undiscovered claims. *Compare Bickings*, 82 F. Supp. 2d at 409, *with Yassan*, 708 F.3d at 974.

-15-

signed a release waiving any claims that arose out of Chase lying to him.

*Id.* at 974-75 (emphasis added).

Numerous courts have reached holdings similar to *Yassan* in cases involving allegations nearly identical to those brought by Plaintiff here. *See, e.g.*, *Magpiong,* 304 F. Supp. 3d at 990 (granting motion to dismiss discrimination and fraudulent inducement claims where plaintiff alleged defendant misrepresented reasons for her termination, finding alleged fraud was precluded by release of unknown claims); *Claxton v. Bowes,* No. 12-0492, 2013 U.S. Dist. LEXIS 42741, at *9–11 (E.D. Wash. Mar. 26, 2013) (rejecting fraudulent inducement allegations based on false representation that "[plaintiff's] job was going to be eliminated," holding, "the Court finds that the no-reliance clause in the Agreement renders any reliance by Plaintiff unreasonable as a matter of law"); *McFarlin v. Gormley*, No. 06-1594, 2008 U.S. Dist. LEXIS 10541, at *18–19 (D. Or. Feb. 12, 2008) ("The release applies to 'all claims known or unknown arising out of Employee's employment . . . and [his] termination'. . . and bars all of plaintiff's state law claims, including the fraud in the inducement claim."); *Chaganti v. Ceridian Benefits,* No. 03-05785, 2004 U.S. Dist. LEXIS 17075, at *7 (N.D. Cal. Aug. 23, 2004) (upholding a release of unknown claims and holding that "[w]hile [plaintiff] alleges fraud, he alleges fraud with respect to the termination of his employment, not with respect to

inducement to enter into the Release").  The Complaint here should be dismissed as well.

> **2. Plaintiff's fraudulent inducement theory fails because it is based on impermissible parol evidence.**

Even if Plaintiff's release of unknown claims did not bar his fraudulent inducement theory, which it does, Plaintiff's attempt to evade the Agreement also fails as a matter of law because his fraudulent inducement claim is based on statements purportedly made in discussions or other communications outside of the Agreement.  Compl. ¶¶ 28, 35, 64.  Pennsylvania law is well-settled that a fraudulent inducement claim may not be based on such parol evidence if the contract at issue is fully integrated.  *See Toy v. Metro. Life Ins*. Co., 928 A.2d 186, 204-06 (Pa. 2007) ("[P]arol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract[.]"); *Bowman v. Meadow Ridge, Inc.*, 615 A.2d 755, 759 (Pa. 1992) (holding that parol evidence rule bars fraudulent inducement claim);  *Interwave Tech., Inc. v. Rockwell Automation, Inc.*, No. 05-398, 2005 WL 3605272, at *18 (E.D. Pa. 2005) ("[T]he Court finds persuasive the numerous opinions that . . . preclude parol evidence when the plaintiff is making a claim of fraudulent inducement and the contract at issue contains an integration clause.").

The Agreement here contains an "Integration" clause stating that it "represents the entire agreement between [Plaintiff] and the Company and

supersedes any and all prior agreements, arrangements, ***representations*** or warranties, ***whether express or implied***, ***written or oral, that relate to the subject matter of this Agreement***." Ex. A, § 16 (emphasis added). Thus, the Agreement is fully integrated, and the parol evidence rule bars Plaintiff from relying on alleged statements or representations made outside of the Agreement to support his fraudulent inducement theory.

### 3.   Plaintiff has not pled and cannot plead *specific facts* that would prove a fraudulent inducement claim.

Yet another alternative, independent reason that Plaintiff's fraudulent inducement theory fails as a matter of law is because he has and cannot plead all of the necessary elements with specificity. Under Pennsylvania law, a fraudulent inducement claim requires plaintiffs to prove, *inter alia*, that the defendant made a material misrepresentation with specific intent to deceive and induce action. *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. Ct. 2005).

As the party seeking to invalidate the Agreement, Plaintiff bears the burden of proving that it is in fact invalid. *Three Rivers Motor*, 522 F.2d at 892. To that end, Plaintiff's "allegations must show fraud or mistake by clear, precise, and convincing evidence." *Culver v. U.S. Dep't of Labor Occupational Safety & Health Admin.*, No. 06-438, 2006 WL 3199138, at *3 (M.D. Pa. Nov. 3, 2006).

-18-

Moreover, under Rule 9(b), allegations of fraud are subject to a heightened pleading standard which requires that a plaintiff "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  Simply stating conclusory allegations will not suffice.  *Id.*

Here, Plaintiff cannot meet his burden to allege ***specific facts*** that would establish fraudulent inducement by clear, precise, and convincing evidence.  Specifically, Plaintiff has not pled facts to demonstrate that Hershey made the purported misrepresentation with knowledge of its falsity or intent to deceive.  Plaintiff raises several conclusory allegations accusing Hershey of fraudulent intent.  But, the only ***facts*** he alleges to support his fraud claim are that: (1) Hershey placed him on paid administrative leave after informing him about the job elimination (Compl. ¶ 36); (2) Hershey revoked his access to its facilitates once he was on paid leave (*id.* ¶ 40); (3) Hershey hired Ms. Folmar for the Head IP position approximately three months after Plaintiff's termination (*id.* ¶ 46); (5) Hershey did not ask him to apply for the Head IP position (*id.* ¶¶ 54-55); and (6) Hershey promotes diversity and specifically diversity for women (*id.* ¶ 60).  These factual

allegations, even if proved to be true, fall woefully short of Plaintiff's burden to prove fraudulent intent by clear, precise and convincing evidence.

**4.    Plaintiff's fraudulent inducement theory also fails because he has not returned the consideration he received.**

As another independent and dispositive basis to reject Plaintiff's attempt to void the Agreement, courts in Pennsylvania have consistently held that a plaintiff cannot bring a fraudulent inducement claim without first returning the consideration received from the contract allegedly induced by fraud. *See, e.g.*, *Cuchara*, 129 F. App'x at 732 (holding that the law in Pennsylvania is clear that once fraudulent inducement is alleged the party "must either return [the] consideration or abandon the claim."); *Nayak v. Voith Turbo, Inc.*, No. 14-01053, 2017 WL 9485536, at *8 (M.D. Pa. July 19, 2017), *report adopted*, 2017 WL 4230923 (M.D. Pa. Sept. 25, 2017) ("Additionally, and importantly in this case, in Pennsylvania, upon discovering fraud in the procurement of the Release, Nayak had the choice of disaffirming the agreement and returning the consideration paid to him or affirming the agreement and waiving any claim of fraud."); *Hess v. Evans*, 431 A.2d 347, 348 (Pa. 1981) ("Plaintiffs cannot proceed in this matter by alleging that the release was obtained as the result of fraud and misrepresentation and at the same time retain the consideration that was paid to them").

The sensible rationale behind these decisions is that a plaintiff should not be permitted to enjoy the benefits of a contract and then refuse to honor her end of the

bargain by asserting that the contract is invalid due to fraud.  *Hess*, 431 A.2d at 348.  And if the plaintiff is choosing to accept the consideration (and not return it), she is in effect ratifying the contract despite any claimed misrepresentation or omission.  *Allied Erecting & Dismantling Co. v. USX Corp*., 249 F.3d 191, 199 (3d Cir. 2001).

Plaintiff received generous severance benefits exceeding $100,000 in exchange for his Agreement.  Plaintiff does not attempt to allege that he returned the consideration because he has not.  Thus, his assertion of fraudulent inducement fails as a matter of law and should be dismissed for this reason as well.

## V.    <u>CONCLUSION</u>

In sum, Plaintiff's own admissions demonstrate that he knowingly and willingly released all of the claims brought in the Complaint.  Plaintiff's theory to circumvent his release by alleging fraudulent inducement fails as a matter of law. Accordingly, Hershey respectfully requests that this Court grant this Motion and dismiss Plaintiff's Complaint, with prejudice, in its entirety.

Dated:  April 9, 2019                    Respectfully submitted,

                                         */s/ Michael S. Burkhardt*
                                         Michael S. Burkhardt (PA 68072)
                                         Michael J. Puma (PA 94463) (admitted *pro hac vice*)

-21-

Eric C. Kim (PA 316245) (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
Tel.:  215.963.5000
Fax:  215.963.5001

*Counsel for Defendant The Hershey Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KURT L. EHRESMAN,

               Plaintiffs,

        v.                           No. 1:19-cv-00212

THE HERSHEY COMPANY,

               Defendant.

### LOCAL RULE 7.8(b)(2) CERTIFICATE OF LENGTH OF BRIEF

Pursuant to Rule 7.8(b)(2) of the Local Rules of Civil Procedure for the U.S.

District Court for the Middle District of Pennsylvania, Defendant The Hershey

Company hereby certifies that its Memorandum of Law in Support of this Motion to

Dismiss contains 4,879 words excluding the table of contents, table of authorities,

case caption, and signature lines, and thus complies with the word-count limit

described in the Local Rules.

Dated:       April 9, 2019         By:  */s/ Michael S. Burkhardt*

                                      Michael S. Burkhardt (ID No. 68072)
                                      Michael J. Puma (ID No. 94453)
                                      (admitted *pro hac vice*)
                                      Eric C. Kim (ID No. 316245)
                                      (admitted *pro hac vice*)
                                      MORGAN, LEWIS & BOCKIUS, LLP
                                      1701 Market Street
                                      Philadelphia, PA  19103
                                      Tel: 215.963.5000
                                      Fax: 215.963.5001
                                      michael.burkhardt@morganlewis.com
                                      michael.puma@morganlewis.com
                                      eric.kim@morganlewis.com

                                    *Counsel for Defendant*