# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA
## COVER SHEET

KURT L. EHRESMAN,
        Plaintiff,

    v.

THE HERSHEY COMPANY,
        Defendant.

: 
: 
: CIVIL ACTION NO: 1:19-CV-0212
: 
: 
: 
: JURY TRIAL DEMANDED

For Plaintiffs:

Michael R. Kelley, Esq., I.D. 58854
Wendell V. Courtney, Esq., I.D. 32103
Smigel, Anderson & Sacks, LLP
4431 North Front Street
Harrisburg, PA 17110
(717) 234-2401
mkelley@sasllp.com
wcourtney@sasllp.com

For Defendants:

Michael S. Burkhardt, Esq., I.D. 68072
Michael J. Puma, Esq., I.D. 94453
Eric C. Kim, Esq., I.D. 316245
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
michael.burkhardt@morganlewis.com
michael.puma@morganlewis.com
eric.kim@morganlewis.com

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### SUBMITTED BY MICHAEL R. KELLEY, ESQ.

# TABLE OF CONTENTS

I.     INTRODUCTION....................................................................1

II.    STATEMENT OF FACTS.......................................................4

III.   LEGAL ISSUE......................................................................8

IV.    ARGUMENT.........................................................................8

    A.     Standards for Ruling on a Motion to Dismiss.............................8

    B.     Plaintiff has Pled a Plausible Claim of Fraudulent Inducement.........9

    C.     Plaintiff's Claims are Not Barred by the General Release.............13

    D.     Plaintiff's Allegations of Fraudulent Inducement Absolutely
        May Invalidate the Agreement.............................................15

    E.     Plaintiff's Fraudulent Inducement Claim is Not Defective
        Because it's Based on Impermissible Parol Evidence.................16

    F.     Plaintiff has Pled Specific Facts to Support His Claim of
        Fraudulent Inducement....................................................19

    G.     Plaintiff Does Not Need to Return His Compensation Under the
        Agreement in Order to Allege Fraud in the Inducement...............20

V.     CONCLUSION....................................................................22

# TABLE OF CITATIONS

## CASES

*Aquino v. Public Finance Consumer Discount Co.*, 606 F.Supp. 504 (E.D.Pa.1985)................. 21

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955.................................................... 9

*Bennett v. Coors Brewing Company*, 189 F.3d 1221 (10th Cir. 1999)......................................... 12

*Black v. Jamison*, 913 A.2d 313 (Pa. Commw. 2006)............................................................ 13

*Brown v. National Permanent Federal Savings & Loan Assoc.*, 683 F.2d 444 (D.C.Cir.1982).. 21

*Eigen v. Textron Lycoming Reciprocating Engine Division*, 874 A2.d 1179 (Pa. Super. 2005).. 10

*Emery v. Mackiewicz*, 240 A.2d 68 (Pa. 1968) .................................................................. 15

*Gianni v. Russel & Co.,* 281 Pa. 320, 126 A. 791 (1924) .................................................... 17

*Gwendolyn Greene v. Southeastern Pennsylvania Transit Authority*, 1982 WL 290298, *205 (Pa.
    Com. Pl. Jan. 21, 1982)..............................................................................................15

*In re Burling Coat Factory Securities Litig.*, 114 F.3d 1410 (3d Cir.1997)............................... 19

*In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 311 F.3d 198 (3d Cir .2002) ...................... 19

*Iqbal*, 129 S.Ct. at 1950 ................................................................................................. 8

*Keenheel v. Commonwealth of Pennsylvania Securities Commission,* 579 A.2d 1358 (Pa.
    Commw. Ct. 1990)......................................................................................................... 21

*Kropa v. Cabot Oil and Gas Corp.*, 716 F.Supp.2d 375 (M.D. Pa. 2010) ................................ 16

*MacKay v. Donovan*, 211 WL 2604339 (E.D. Pa. 2011), ...................................................... 13

*Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Inv.*, 951 F.2d 1399 (3d
    Cir.1991)........................................................................................................................ 17

*Moser v. DeSetta*, 527 Pa. 157, 589 A.2d 679 (1991) ............................................................. 19

*Pension Benefit*, 998 F.2d at 1196...................................................................................... 9

*Powers v. Sims & Levin*, 542 F.2d 1216 (4th Cir.1976) ......................................................... 21

*Price v. Elexco Land Services, Inc.*, 2009 WL 2045135 (M.D. Pa. 2009) ............................... 19

*Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548 (3d Cir.2002) ...................................... 9

*TruePosition, Inc. v. Sunon, Inc.*, 2006 WL 1451496 (E.D. Pa. 2006) ................................... 19

*U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383 (3d Cir.2002)............................................ 9

*Vartan v. Wells Fargo Bank Nw., N.A.*, 2012 WL 1339904 (April 18, 2012)............................ 8

*Wastak v. Lehigh Valley Health Network*, 342 F.3d 281 (3d Cir. 2003) .................................. 13

*Yassan v. J.P. Morgan Chase and Company*, 708 F.3d 1963 (7th Cir. 2013)............................. 14

## STATUTES

42 U.S.C. §§2000e to 2000e-17....................................................................................... 2

Discrimination in Employment Act of 1967, 29 U.S.C. §§621-634............................................. 2

Pennsylvania Human Relations Act, 43 P.S. §951-963........................................................ 2

## RULES

Fed.R.Civ.P. 8(a) ........................................................................................................ 8

**SMIGEL, ANDERSON & SACKS, LLP**
River Chase Office Center
4431 North Front Street, 3rd Floor
Harrisburg, PA 17110-1778
(717) 234-2401

**Michael R. Kelley, Esquire**
I.D. No. 58854
**Wendell V. Courtney, Esquire**
I.D. No 32103
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KURT L. EHRESMAN, | : |
| Plaintiff, | : <br> : <br> : |
| | : CIVIL ACTION NO:  1:19-CV-0212 |
| | : |
| v. | : <br> : |
| THE HERSHEY COMPANY, | : <br> : |
| Defendant. | : JURY TRIAL DEMANDED |

### PLAINTIFF'S MEMORANDUM OF LAW IN
### OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### I.    Introduction.

On October 2, 2017, Adrian Mebane and Esther Read of Defendant The

Hershey Company ("Hershey") informed Plaintiff Kurt Ehresman ("Ehresman")

that his job was being terminated for the legally permissible reason that Hershey

had decided to eliminate his position as Senior Counsel for Global Intellectual

Property.  Unbeknownst to Ehresman at that time, the reason given for his

termination was a knowing and intentional lie. As Ehresman would first learn in March, 2018, the true reason for his termination was the Legal Department at Hershey decided to fire an older white male to replace him, consistent with Hershey's goals of increasing diversity, with a much younger African-American female who was a friend and former colleague of Hershey's General Counsel.

Because the true reason for his termination violates the Pennsylvania Human Relations Act, 43 P.S. §951-963, the race, color and gender discrimination provisions of 42 U.S.C. §§2000e to 2000e-17, and the Discrimination in Employment Act of 1967, 29 U.S.C. §§621-634, Hershey covered up the true reason for Ehresman's firing by 1) lying to him that his position was being eliminated, 2) quickly ushering him out of the building, removing his security access and cutting off contact with other Hershey employees, and 3) inducing him to sign a Separation Agreement in which he ostensibly gave up his right to sue Hershey. In furtherance of its fraudulent scheme, Hershey never announced or advertised its "newly created position" of "Head of Intellectual Property," nor did it notify Ehresman, a highly rated employee who was qualified for the position. Rather, Hershey solicited Ehresman's replacement during his employment, and waited to hire the much younger female African-American IP attorney about two months after Ehresman's termination became effective.

The question before this Court is whether on these facts Plaintiff has plausibly asserted a claim that he was fraudulently induced to sign the Separation Agreement. Assuming the facts in the light most favorable to Ehresman, he has met the required standard. The elements of fraud in the inducement are: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

The allegations of Plaintiff's Complaint meet all of these elements. Hershey represented that it was terminating Plaintiff because it was eliminating his position with the Company. That representation was material in convincing Plaintiff to sign the Separation Agreement. The representation was false. The true reason for terminating Plaintiff was that he was over 50, white and male. Hershey knew that its statement was false. The evidence for this includes the initial lie, its attempts to cover it up by pushing Plaintiff out of the building, and waiting until after he was effectively gone before hiring a new person into a "new" position. This "new" position, however, is the same since it remains the sole attorney in the company for the specialized global Intellectual Property of Defendant. Hershey intended to mislead Ehresman so that he would rely upon the misrepresentation and sign the

3

Separation Agreement without further trouble. Plaintiff's injury was proximately

caused by his reliance on the misrepresentation because, but for the

misrepresentation, he would not have signed the Separation Agreement and would

have been able to directly sue Hershey for age, race and gender discrimination.

Plaintiff has plausibly stated a claim for fraudulent inducement. Hershey's

Motion for Judgment on the Pleadings is without merit and should be denied.

## II.    Statement of Facts.

Plaintiff is 52 years old, male and Caucasian. He is a licensed United States

patent and trademark attorney in good standing, and a licensed Pennsylvania

attorney in good standing. In 2013, Defendant recruited Plaintiff to accept

employment as its first licensed patent attorney in the history of the Hershey

Company. During the recruitment process, Defendant represented that Plaintiff

could expect to be in the role until retirement, assuming acceptable job

performance. Plaintiff gave up a lucrative private practice in order to take the

position with Hershey in August, 2013. Plaintiff was at all times a stellar

employee, receiving raises and promotions throughout his over four-year

employment with Hershey.

On October 2, 2017, Plaintiff went to the office of Adrian Mebane,

ostensibly to discuss work. Esther Read, from Defendant's Office of Human

Resources, was with Mebane. They told Plaintiff "the Company has decided to

4

eliminate your position, effective December 29, 2017." Mebane offered that

Plaintiff could take some time to process, but that the decision to eliminate his

position was final. Read then described a proposed severance package, which she

indicated would be available in a few days. Plaintiff left his meetings with Mebane

and Read with a clear understanding that Defendant had eliminated his position,

and he had no reason to doubt the truth of Mebane and Read's representations.

Since Mebane and Read had encouraged him to work through the end date

of December 29, Plaintiff continued working and returned to his office the next

work day. A short time into that workday, he was told by Mebane that he should

leave his office within 15 minutes. He was also told to leave by Matt Ryan,

another employee of the Company. Plaintiff immediately left the offices and was

never allowed to step foot into his Hershey office again.

Hershey then began a systematic concealment of the real reasons for

Plaintiff's termination. Plaintiff's access badge and email access was revoked. He

was provided with a severance agreement that said nothing about the real reason

for his termination. Believing that Hershey was terminating him for their stated

reason that it was eliminating his position, Plaintiff executed the Severance

Agreement on November 16, 2017.

On or about March 7, 2018, a little more than two months after the

severance effective date of December 29, 2017, Plaintiff learned that Defendant

had hired a new attorney as "Head of Intellectual Property," directly replacing him in his prior position. On or about March 8, 2017, Plaintiff located the LinkedIn profile of the person hired to replace him. The profile shows she was hired as Head of Intellectual Property at The Hershey Company, a slight but insignificant title change from Plaintiff's position as Senior Counsel for Global Intellectual Property. The new Head of Intellectual Property at the company is a trademark attorney, and not a licensed registered patent attorney. She is female. She is African-American. She is well under 50 years of age. The new Head of Intellectual Property also worked at Coca-Cola from 2006 to 2015, where she worked with Leslie Turner, the General Counsel for Hershey at the time of Ehresman's termination. Turner is also a female African-American. This new hire and Turner's careers at Coca-Cola's law department overlapped and Plaintiff believes that they knew each other and were involved in many of the same activities at Coca Cola and in professional attorney organizations, including diversity committees and minority professional associations.

Plaintiff was stunned to learn of Defendant's creation of the "new" position, and its secretive recruitment and hiring for that position made clear the false nature of Defendant's representations to him. Defendant's termination of Plaintiff's employment occurred contemporaneously with Defendant's recruitment and hiring of an under 50, African-American woman to take his place. Upon information and

6

belief, the administrative leave on which Plaintiff was placed was orchestrated by Defendant to prevent Plaintiff from discovering Defendant's discriminatory acts. Defendant never mentioned to Plaintiff the position of Head of Intellectual Property, or invite him to apply for it as it had done in 2016 when Defendant canvased externally, invited Plaintiff to apply, and then unanimously awarded Plaintiff the position of Senior Counsel for Global Intellectual Property. In his role at Defendant from January 2016 through December 29, 2017, Plaintiff clearly was the global Head of Intellectual Property, performing every role of the only intellectual property attorney position within Hershey and its related company, Hershey Chocolate & Confectionary Company ("HCCC"). The position of Head of Intellectual Property is the same position Plaintiff held and performed as Senior Counsel for Global Intellectual Property. Defendant's termination of Plaintiff's employment was to eliminate the position of a white male over the age of 50 and to increase Defendant's diversity by hiring an African-American female significantly younger than Plaintiff. During the time that Plaintiff was employed by Defendant, it also terminated the employment of other attorneys who were Caucasian, male, and/or over the age of 40. Plaintiff believes and therefore avers that Defendant intentionally and systematically terminated employees who are older and Caucasian to advance its stated diversity goals.

### III.   Legal Issue.

Whether Plaintiff has presented a plausible claim that he was fraudulently

induced into signing the Separation Agreement?

[Suggested Answer]:  Yes.

### IV.   Argument.

#### A.   Standards for Ruling on a Motion to Dismiss.

This Court has succinctly set forth the standards in ruling on a Motion to

Dismiss in its decision in *Vartan v. Wells Fargo Bank Nw., N.A.*, 2012 WL

1339904 (April 18, 2012):

> Courts use the same standard in ruling on a motion
> to dismiss a counterclaim as they do a motion to
> dismiss a complaint where dismissal is sought under
> Federal Rule of Civil Procedure 12(b)(6) (citations
> omitted). In light of this legal standard, the court
> "must accept as true all the allegations in the
> [counterclaims] and all reasonable interferences
> that can be drawn from them, and view them in the
> light most favorable to the non-moving party."
> (citations omitted). The counterclaims must do
> more than allege the claimant's entitlement to relief;
> it must "show such an entitlement with its facts."
> (citations omitted). As the Supreme Court
> instructed in *Iqbal,* "[w]here the well-pleaded facts
> do not permit the court to infer more than the mere
> possibility of misconduct, the [counterclaimant] has
> alleged—but it has not 'show[n]'—'that the pleader
> is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1950
> (quoting Fed.R.Civ.P. 8(a) (alterations in original)).
> **In other words, a claim has "facial plausibility
> when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference**

**that the defendant is liable for the misconduct alleged.**" *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

"To decide a motion to dismiss, courts generally consider only the allegations contained in the [counterclaim], exhibits attached to the [counterclaim] and matters of public record." (citations omitted). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the [counterclaims] are based on the [attached] document[s]." *Pension Benefit,* 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the [counterclaim] and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 560 (3d Cir.2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir.2002).

*Id.* at *3 (bold added).

Plaintiff's Complaint contains a claim for fraudulent inducement that has "facial plausibility ... that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Id.*

## B.   Plaintiff has Pled a Plausible Claim of Fraudulent Inducement.

"The elements of fraud in the inducement are as follows:  (1) a representation; (2) which is material to the transaction at hand; (3) made falsely,

with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Eigen v. Textron Lycoming Reciprocating Engine Division*, 874 A2.d 1179, 1185 (Pa. Super. 2005).

In this case, Plaintiff has alleged that Defendant made a false representation material to his termination. The false representation was that it was terminating him because the Company was eliminating his position. In fact, the Company did not eliminate his position. Instead, it changed the title while keeping the same responsibilities of Plaintiff's position and role of the SOLE IP attorney, and simultaneously recruited and then hired a younger African-American female to replace Plaintiff, a white male over the age of 50. This representation was material to the transaction because as Plaintiff states in his Complaint, he would not have signed the Separation Agreement had he known the true facts. He either would have negotiated for additional amounts of compensation, or he would have sued the Company for age, gender and race discrimination. Plaintiff has also alleged sufficient facts to show that Defendant knew that the statement was false. Plaintiff was an exemplary employee. He received good reviews during the entire time that he was employed with the Company. Out of the blue, he was told that his employment is being terminated because his position was being eliminated. He

was quickly ushered out of the building and his access to the building, his files, and any contact with his colleague employees were quickly taken from him. Only approximately two months after his termination became effective did Defendant allow any public disclosure that it had hired the younger, African-American woman to perform all the same responsibilities of Plaintiff's job position.

At the pleadings stage, this is sufficient information to support a claim that Defendant knew that its statement to Plaintiff was not true. Plaintiff has also pled sufficient information to show that Defendant intended to mislead him into relying upon the statement that his position was being eliminated. If Defendant had told Plaintiff that it was terminating his employment due to his age, race or gender, that would be a clear violation of the law. Instead, even though that was Defendant's goal, as Plaintiff pleads, Hershey lied and said that it was eliminating Plaintiff's position as pretext for its discrimination. Plaintiff justifiably relied upon Defendant's lie and misrepresentations in entering into the Separation Agreement. At the time he entered into the Agreement, he had no reason to believe that Defendant was terminating him for any other reason than that offered to him. If in fact the reason proffered by Defendant was true, Plaintiff was willing to accept his termination on the terms set forth in the Separation Agreement. Plaintiff has further pled sufficient facts to show that his resulting injury was proximately caused by his reliance upon the false statement. Plaintiff's injury here is that he

gave up the right to seek additional compensation for violation of age, race, and gender discrimination laws, or the right to sue under those laws, based upon the false statement to him that his job position was being eliminated.

Defendant's assertion in its Memorandum of Law that Plaintiff has failed to state sufficient facts to support a claim of fraudulent inducement is simply not supported by the law or the facts alleged in the Complaint.

It is worth noting that the Tenth Circuit Court of Appeals has dealt with an issue nearly on point. In *Bennett v. Coors Brewing Company*, 189 F.3d 1221 (10th Cir. 1999), Plaintiffs were the security employees of Coors. Plaintiffs alleged that Coors had represented that it was going to terminate the employee security positions in favor of outsourcing the job to others. Many of the security employees then signed separation agreements in which they received compensation in return for a waiver and release of claims. A short time after the releases became effective, Coors hired a number of new security employees, most of whom were under the age of 40. Plaintiffs sued for age discrimination, and asserted that the release should be invalidated due to fraud. The Tenth Circuit held:

> When taken in the light most favorable to the non-moving party, the fact that Coors began to advertise for new employees five days after appellants' official termination date and the allegation that Coors re-hired the security department to approximately the same number as before the downsizing is sufficient on the record to support

12

appellants' allegations and establish a *prima facie*
claim of fraud.

*Bennett*, 189 F.3d at 1230.

Plaintiff's pleadings allege a similar conspiracy and concealed secret
recruiting activity of a known candidate by Defendant to replace Plaintiff, prior to
Plaintiff's end of employment. Under the standard of plausibility, Plaintiff has
alleged a plausible claim of fraudulent inducement. Hershey's Motion to Dismiss
should therefore be denied.

### C.   Plaintiff's Claims are Not Barred by the General Release.

Defendant argues that Plaintiff's claims are barred by the general release
because he gave a knowing and willful release of such claims. Nothing could be
further from the truth. "A signed release is binding upon the parties **unless executed
and procured by fraud, duress, accident or mutual mistake.**" *Wastak v. Lehigh
Valley Health Network*, 342 F.3d 281, 295 (3d Cir. 2003) (bold added). "A release
that is obtained by fraud is not binding between the parties." *MacKay v. Donovan*,
2011 WL 2604339, *4 (E.D. Pa. 2011); *Black v. Jamison*, 913 A.2d 313, 318 (Pa.
Commw. 2006). Further, as the Tenth Circuit analyzed in the *Bennett* case cited
above, "... a court must look to the 'totality of the circumstances' to determine if the
release of an employment discrimination claim is knowing and voluntary. This
approach, adopted by a 'majority of circuits,' requires that a court 'explicitly look
beyond the contract language and consider *all relevant factors* in assessing a

plaintiff's knowledge and the voluntariness of the waiver.'" *Bennett*, 189 F.3d at 1228. The Court went on to explain: "The individual [waiving his rights]...*must have acted in the absence of fraud, duress, coercion, or mistake of material fact*." *Id.* at 1229. The Court then held: **"[a]pplying these principles, we hold that non-statutory circumstances such as fraud, duress or mutual mistake may render an ADEA [Age Discrimination in Employment Act] waiver not 'knowing or voluntary' under the OWBPA [Older Workers Benefit Protection Act]."** *Id.* at 1229 (bold added).

Under the authorities cited above, the release contained in the Separation Agreement does not bar a claim of fraudulent inducement. Moreover, if Plaintiff proves his claims at trial, there was never any knowing and willful waiver of claims in the first place.

The *Yassan v. J.P. Morgan Chase and Company*, 708 F.3d 1963 (7th Cir. 2013) case relied upon by Defendants does not support their position. That case involved a release that specifically included the release of fraud claims. The release used by Hershey in this case does not specifically release fraud claims. While Plaintiff does not concede that even if his release had included fraud claims it would bar his claim of fraudulent inducement, the Release that Plaintiff signed does not include a specific release of fraud claims. The *Yassan* case is therefore clearly distinguishable.

Contrary to Hershey's argument, the element of fraud brings into question whether the Release signed by Ehresman was a "knowing or willing" release of claims. Plaintiff must be given the opportunity to develop such facts through the discovery process. The Motion to Dismiss should be denied.

### D. Plaintiff's Allegations of Fraudulent Inducement Absolutely May Invalidate the Agreement.

Defendant argues that the allegations of fraudulent inducement, even if taken as true, cannot invalidate the Separation Agreement and the waivers of the discrimination claims. This is not true.

"The current law in this Commonwealth is that an explicit release of all claims, both known and unknown, bars the releasor from further recovery **unless there is evidence of fraud, duress or deception in the securing of the Release.**" *Gwendolyn Greene v. Southeastern Pennsylvania Transit Authority*, 1982 WL 290298, *205 (Pa. Com. Pl. Jan. 21, 1982) (citing *Emery v. Mackiewicz*, 240 A.2d 68 (Pa. 1968)) (bold added). The Pennsylvania Supreme Court has addressed this issue and found that if a settlement agreement is induced by fraud, the settlement agreement may be invalidated. Defendant's claims otherwise are simply not supported by the law.

Again, Defendant cites *Yassan*, which has no precedential value. That case is distinguishable on the very important basis that the Release in that case specifically included a release of all claims of fraud, whether known or unknown. That is not

the case here. The Release signed by Ehresman was a generic release of all claims known and unknown, <u>without specific mention of fraud</u>. Plaintiff would certainly not concede that even a release of specific fraud claims would be sufficient to dismiss his claim of fraudulent inducement. However, that issue is not before the Court. Plaintiff has cited ample authority that fraud may invalidate a settlement agreement. The Motion to Dismiss should be denied.

### E.   Plaintiff's Fraudulent Inducement Claim is Not Defective Because it's Based on Impermissible Parol Evidence.

Defendant argues that Plaintiff's claim of fraudulent inducement should be dismissed because it is based upon impermissible parol evidence. Neither the facts pled in the Complaint, nor the law, support Defendant's argument.

This very issue was addressed thoroughly in *Kropa v. Cabot Oil and Gas Corp.*, 716 F.Supp.2d 375 (M.D. Pa. 2010). In that case, the Defendant, as here, argued that the Court committed clear error of law in denying Defendant's Motion to Dismiss Plaintiff's fraudulent inducement claim. Defendant argued that the parol evidence rule prevented the Court from considering external evidence in evaluating the contract. The Court summarized the relevant law as follows:

> The parol evidence rule is a doctrine of contract interpretation. The rule works "'to preserve the integrity of written agreements by refusing to permit the contracting parties to attempt to alter the import of their contract through the use of contemporaneous [or prior] oral declarations." (citations omitted).

16

As defined in Pennsylvania, the parol evidence rule provides that:

> Where parties, **without fraud** or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract, ... and **unless fraud**, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence.

> *Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Inv.,* 951 F.2d 1399, 1405 (3d Cir.1991) (quoting *Gianni v. Russel & Co.,* 281 Pa. 320, 126 A. 791 (1924)). Thus, for the parol evidence rule to apply, a court must answer three questions: "(1) Have the parties made a contract? **(2) Is that contract void or voidable because of illegality, fraud, mistake, or any other reason?** (3) Did the parties assent to a particular writing as the complete and accurate 'integration' of that contract." Corbin on Contracts § 573. **If the answer to any of these questions is "no," then the rule does not apply.** *Id.* As the Third Circuit Court of Appeals has pointed out, "'no contract, no parol evidence rule.'" *Mellon,* 951 F.2d at 1408.

The court will deny the motion for reconsideration on these grounds. ...The purpose of the parol evidence rule is to give meaning to the writings of

parties who sign valid contracts. Here, the plaintiff alleges that no valid contract exits, because the defendant induced plaintiff to sign the contract through fraud. Plaintiff does not ask the court to interpret the terms of the contract between the parties by using oral or written evidence outside that document, but instead asks the court to find that no contract existed between the parties because of fraud in the inducement. **"[E]vidence of fraud in the inducement will suspend the parol evidence rule because fraud prevents formation of a valid contract."** *Mellon,* **951 F.2d at 1408;** *see also,* **Corbin on Contracts § 580 (noting that "fraud in the inducement of assent, or an antecedent mistake by one known to the other, may make the contract voidable without preventing its existence, and without showing that the writing was not agreed on as a complete integration of its terms."). The parol evidence rule does not prevent an inquiry into the existence of a contract itself.**

*Id.* at 379.

Defendants are misstating the law applicable to claims of fraudulent inducement. Plaintiff does not contend that the Agreement should be altered or amended based upon information outside of the Agreement itself. Plaintiff argues that the Agreement itself is invalid because it was based upon fraudulent inducement in executing the Agreement. As the Court above notes: "Evidence of fraud in the inducement will suspend the parol evidence rule because fraud prevents formation of a valid contract." *Id.*

18

Defendant's argument that parol evidence prevents Plaintiff's claim here is simply without merit. Its Motion should be denied.

### F. Plaintiff has Pled Specific Facts to Support His Claim of Fraudulent Inducement.

Defendant next argues that Plaintiff has failed to allege specific facts that support the claim of fraudulent inducement. This is not the case.

> Rule 9(b) requires that, when a plaintiff makes allegations of fraud, "the circumstances constituting fraud ... shall be stated with particularity," but "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Id. The Third Circuit has explained that **a plaintiff must plead "all of the essential factual background that would accompany 'the first paragraph of any newspaper story'-that is, the 'who, what, when, where, and how' of the events at issue."** In re Rockefeller Ctr. Props., Inc. Securities Litig., 311 F.3d 198, 216-217 (3d Cir .2002) (quoting In re Burling Coat Factory Securities Litig., 114 F.3d 1410, 1422 (3d Cir.1997)).

*TruePosition, Inc. v. Sunon, Inc.*, 2006 WL 1451496, *4 (E.D. Pa. 2006).

The courts have further clarified what "fraud" means in terms of pleading.

> "Fraud" consists of "anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." *Moser v. DeSetta*, 527 Pa. 157, 163, 589 A.2d 679, 682 (1991).

*Price v. Elexco Land Services, Inc.*, 2009 WL 2045135, *2 (M.D. Pa. 2009).

Plaintiff has adequately pled fraud in his Complaint.  Plaintiff has identified "who" made the fraudulent statements:  Adrian Mebane and the Human Relations representative Esther Read of Hershey.   He has identified "what" the misrepresentation was:  Defendant misrepresented that his job position was being terminated, when the truth was he was being terminated to be replaced in the same position and specialized job responsibilities by a younger African-American female. Plaintiff identifies the "when" by listing the specific dates of when the misrepresentations and the cover up took place.  He specifically pleads "where" the misrepresentations took place, initially in Mr. Mebane's office, and then continuously thereafter including through signing of the Separation Agreement and beyond.  Plaintiff provides all the details of "how" the misrepresentations, execution of the Separation Agreement, and the information that he learned later concerning his replacement.  This is not a situation where the Plaintiff alleges mostly or only legal conclusions.  Plaintiff's Complaint contains hard facts to support his claim of fraudulent inducement.  Defendant's argument to the contrary has no merit, and its Motion must therefore be denied.

**G.     Plaintiff Does Not Need to Return His Compensation Under the Agreement in Order to Allege Fraud in the Inducement.**

Defendant argues that Plaintiff must return the compensation in order to maintain a claim that the Separation Agreement should be rescinded based upon the

fraud in the inducement as outlined above. It is true that the compensation must be returned, at some point. However, Plaintiff respectfully asserts that under Pennsylvania law and the facts of this case, the compensation does not have to be returned before this Court makes a final determination that Hershey committed fraud in the inducement.

The decision in *Keenheel v. Commonwealth of Pennsylvania Securities Commission,* 579 A.2d 1358 (Pa. Commw. Ct. 1990), stands for the proposition that this Court has discretion as to when the compensation must be returned. As here, that case dealt with rescission of an employee separation agreement. Like Hershey, the defendant in that case argued that repayment of the consideration was a prerequisite to a claim of rescission. The Court disagreed:

> The failure of the Petitioner to tender the money is not necessarily fatal to his claim, however, for the reason that this Court has the equitable power to condition rescission upon a return of the $6000 to the Commission. Aquino v. Public Finance Consumer Discount Co., 606 F.Supp. 504 (E.D.Pa.1985); *see also* Brown v. National Permanent Federal Savings & Loan Assoc., 683 F.2d 444 (D.C.Cir.1982); Powers v. Sims & Levin, 542 F.2d 1216 (4th Cir.1976). Consequently, if based upon the record developed, this Court determines that rescission of the agreement is warranted, rescission will only be permitted upon tender by Petitioner of the $6000 paid to him by the Commission.

*Id.* at 1362.

Plaintiff contends that this Court should likewise find that tendering the full compensation of more than $100,000 is not required in order to pursue a claim of rescission based upon fraud in the inducement. To do so, would create the very negative consequence of preventing an employee who was duped by fraud into signing a separation agreement from being able to pursue that claim of fraud unless he is able to come up with such a significant sum of money. Plaintiff further asserts that the obvious disparity in economic positions between the parties (Plaintiff, an individual who has not had full-time employment since his top-tier position at Hershey, versus an $8-billion-per-year company that ended Plaintiff's employment and paid just six month's salary to him) requires the Court to exercise the discretion available to it.

## V.    Conclusion.

For the reasons set forth above, Defendant's Motion to Dismiss is without merit and should be denied.

Respectfully submitted,
**SMIGEL, ANDERSON & SACKS, LLP**

Date: April 23, 2019         By: _____
Michael R. Kelley, Esquire – ID # 58854
Wendell V. Courtney, Esquire – ID # 32103
4431 North Front Street
Harrisburg, PA 17110
(717) 234-2401
*Attorneys for Plaintiff*

22

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KURT L. EHRESMAN,         :
                          :

   Plaintiff,          :
                          : CIVIL ACTION NO: 1:19-CV-0212

   v.              :
                          :

THE HERSHEY COMPANY,    :
                          :

         Defendant.    : JURY TRIAL DEMANDED

## LOCAL RULE 7.8(b)(2) CERTIFICATE OF LENGTH OF BRIEF

Pursuant to Rule 7.8(b)(2) of the Local Rules of Civil Procedure for the U.S. District Court for the Middle District of Pennsylvania, Plaintiff Kurt L. Ehresman hereby certifies that its Memorandum of Law in Opposition to Defendant The Hershey Company's Motion to Dismiss the Complaint contains 4,964 words, excluding the Table of Contents, Table of Authorities, case caption, and signature lines, and thus complies with the word-count limit described in the Local Rules.

                       **SMIGEL, ANDERSON & SACKS, LLP**

Date: April 23, 2019     By: _____

                       Michael R. Kelley, Esquire – ID # 58854
                       Wendell V. Courtney, Esquire – ID # 32103
                       4431 North Front Street
                       Harrisburg, PA 17110
                       (717) 234-2401
                       *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Michael R. Kelley, Esquire, hereby certify that I, this day, have served a

true and correct copy of the foregoing document(s) upon counsel as addressed below

by electronic case filing:

Michael S. Burkhardt, Esquire
Michael J. Puma, Esquire
Eric C. Kim, Esquire
Morgan, Lewis & Bockuis, LLP
1701 Market Street
Philadelphia, PA  19103
215-963-5000
michael.burkhardt@morganlewis.com
michael.puma@morganlewis.com
eric.kim@morganlewis.com


**SMIGEL, ANDERSON & SACKS, LLP**

Date:  April 23, 2019          By: _____
Michael R. Kelley, Esquire – ID # 58854
Wendell V. Courtney, Esquire – ID # 32103
4431 North Front Street
Harrisburg, PA 17110
(717) 234-2401
*Attorneys for Plaintiff*