IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KURT L. EHRESMAN,** | : | Civil No. 1:19-cv-212 |
| Plaintiff, | : | |
| v. | : | |
| **THE HERSHEY COMPANY,** | : | |
| Defendant. | : | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

In this civil action, Plaintiff Kurt L. Ehresman ("Plaintiff") asserts claims against Defendant The Hershey Company ("Defendant") for fraudulent inducement; violation of the Pennsylvania Human Relations Act, 43 P.S. § 951-963; race, color, and gender discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 ("Title VII"); and violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et. seq.* ("ADEA"). Before the court is Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to the Federal Rule of Civil Procedure 12(b)(6). (Doc. 11.) Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the court will grant the motion to dismiss with prejudice.

## I. Background

### A. Facts

The following facts are taken as true for the purposes of the motion to dismiss. Plaintiff is a 52 year-old Caucasian male. (Doc. 1, ¶ 6.) He has been a licensed Pennsylvania attorney since 1996 and is currently a United States Patent & Trademark Office Registered Patent Attorney in good standing. (*Id.* ¶¶ 7-8.) Plaintiff was first employed by Defendant on August 23, 2013, as "Counsel, Technology Intellectual Property." (*Id.* ¶ 9.) Plaintiff performed all duties and responsibilities in his role and received positive performance reviews. (*Id.* ¶ 15.)

In February 2016, Defendant awarded Plaintiff the position of Senior Counsel for Global Intellectual Property. (*Id.* ¶ 17.) In the new position, Plaintiff executed contracts, intellectual property applications and declarations, and other documents for Defendant and The Hershey Chocolate & Confectionery Company ("HCCC"). (*Id.* ¶¶ 18-22.) In each of Plaintiff's annual performance reviews, he was rated no lower than "meets expectations." (*Id.* ¶ 25.)

On October 2, 2017, Defendant informed Plaintiff that it was eliminating his position effective December 29, 2017. (*Id.* ¶¶ 26-28.) However, one week later and without explanation, Defendant directed Plaintiff to leave the office and work remotely, and on October 13, 2017, Defendant placed Plaintiff on paid administrative leave through December 29, 2017. (*Id.* ¶¶ 37-40.)

In the following weeks, Defendant proposed terms of a severance package for the termination of Plaintiff's employment, contingent on Plaintiff signing a severance agreement. (*Id.* ¶ 34.) Relying on Defendant's statements and representations that his position was, in fact, being eliminated, Plaintiff signed the Severance Agreement ("Agreement") on November 16, 2017. (*Id.* ¶¶ 42-43.) Plaintiff would not have signed the Agreement had he known or had reason to believe that Defendant's statements regarding the elimination of his position were false. (*Id.* ¶ 44.)

On or about March 7, 2018, Plaintiff learned that Defendant created and filled the position of Head of Intellectual Property—a position nearly identical to that which Plaintiff held prior to his termination. (*Id.* ¶ 47.) Plaintiff avers that he was placed on administrative leave and terminated so that he could be replaced by a younger, African-American woman to promote Defendant's goal of diversity. (*Id.* ¶¶ 48-53.)

### B. **Procedural History**

Plaintiff commenced this action by filing a complaint in the Middle District of Pennsylvania on February 6, 2019. (Doc. 1.) On April 8, 2019, Defendant responded with a motion to dismiss and brief in support for failure to state a claim. (Docs. 11 & 13.) On April 23, 2019, Plaintiff filed a brief in opposition to the

motion (Doc. 15), and Defendant replied on April 30, 2019 (Doc. 19). Accordingly, the motion has been fully briefed and is ripe for disposition.

## II. **Legal Standard**

For a complaint to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's short and plain statement of the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted) (citing *Twombly*, 550 U.S. at 555, 557). However, this "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for

enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *W. Penn Allegheny Health Sys. Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (quoting *Phillips*, 515 F.3d at 234). When conducting this inquiry, the court considers "the allegations in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III. <u>Discussion</u>

In moving to dismiss the complaint, Defendant relies on a general release ("Release") incorporated into the Agreement[2] which Defendant argues bars Plaintiff's right to assert any of the claims set forth in the complaint. (Doc. 13, p. 7.) The court agrees.

### A. <u>The agreement and general release are valid and enforceable</u>

An employee may validly waive claims pursuant to a general release so long as the waiver is executed "knowingly and willfully." *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988) (quoting *Alexander v. Gardner-Denver Co.*, 515 U.S. 36 (1974)). To ascertain whether a general release was made knowingly and voluntarily, the Third Circuit endorses a totality of the circumstances test. *Id.* at

---

[2] Both the Agreement and Release were attached to the complaint and may be considered by this court in disposing of the instant motion. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

524. The totality test examines the circumstances and conditions under which the release was executed and includes:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time the plaintiff had for deliberation of the release before signing it; (4) whether plaintiff knew or should have known of her rights upon execution of the release before signing it; (5) whether plaintiff was encouraged to seek, or in fact received, the benefit of counsel; (6) whether there was opportunity for negotiation of the terms of the agreement; [and] (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled to by law.

*Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1988); *see also Coventry*, 856 F.2d at 522-23; *Gregory v. Derry Twp. Sch. Dist.*, No. 09-00780, 2010 U.S. Dist. LEXIS 1875, at *6-7 (M.D. Pa. Jan. 11, 2010), *aff'd*, 418 F. App'x 148 (3d Cir. 2011). The court may also consider "whether there is evidence of fraud or undue influence, or whether enforcement of the agreement would be against the public interest." *W.B. v. Matula*, 67 F.3d 484, 497 (3d Cir. 1995) (citing *Coventry*, 856 F.2d at 522-23).

### 1. Clarity and specificity of the release language

The court finds the language of the Release is both clear and specific. The Release states that it "covers both claims you know about and those you may not know about that have accrued as of the time you sign this Agreement." (Doc. 1,

6

Ex. A, ¶ 5(c).) Additionally, the Release contains a paragraph that enumerates a non-exhaustive list of claims waived, which includes the claims alleged by Plaintiff. The Release covers "damages arising under the Age Discrimination Act ('ADEA') . . . Titles VII of the Civil Rights Act of 1964 ('Title VII') . . . the Pennsylvania Human Relations Act ('PHRA'), and any other Federal, state or local law concerning the employment relationship that is applicable to you, including laws concerning wrongful termination and/or discrimination in employment based on sex . . . race, color . . . age . . ." as well as "claims based on theories of contract or tort, whether based on common law or otherwise . . ." (*Id.* at ¶5(b).) *See Cuchara v. Gai-Tronics*, No. 03-6573, 2004 U.S. Dist. LEXIS 11224, at * 17 (E.D. Pa. Apr. 8, 2004) *aff'd*, 129 F. App'x 728 (3d Cir. 2005) (holding a release containing waiver language in a separate paragraph effectively communicated to an employee which claims he was waiving).

Based on a plain reading of the Release, the court concludes that the Release's waiver language was clear and unambiguous.

### 2. Education and business experience

Plaintiff's educational and professional experience is sufficient to understand the Release. Plaintiff is an attorney with over twenty years of experience; therefore, he has the education and qualifications to understand the terms of the Release. *See Gregory*, 2010 U.S. Dist. LEXIS 1875 at *16-17 (holding

7

that plaintiff possessed the requisite education and experience to understand the terms of the general release having a bachelor's degree in English and a master's degree).

### 3. Length of time for deliberation

Plaintiff had over a month to review and revise the Agreement before its execution. Plaintiff admits in the complaint that from "October 18 through November 24, 2017, Plaintiff worked to review, revise, and execute the Severance Agreement." (Doc. 1, ¶ 42.) Plaintiff was therefore given adequate time to carefully consider the Release and was not rushed into signing the Agreement. *See Cuchara*, 2004 U.S. Dist. LEXIS 11224 at \*17 (holding that twenty-one days was adequate to overcome the shock of being terminated in order to render a decision on the agreement in question.)

### 4. Knowledge of legal rights at execution

Plaintiff would have understood his options at the time he executed the Agreement. Plaintiff is an experienced attorney in good standing. It follows that Plaintiff was aware, or at least should have been aware, of his legal rights as well as the possibility that signing the Agreement meant the release of potential legal claims based on employment discrimination.

### 5. Encouraged to seek or received benefit of counsel

Plaintiff had the opportunity to seek outside counsel. The revocation of rights section is accompanied by specific language stating: "[y]ou have been advised to consult an attorney before signing this Agreement." (Doc. 1, Ex. A, ¶ 14(b).) The language is again repeated in bolded letters on the last page of the Agreement above the signature lines.

### 6. Opportunity to negotiate the terms of the release

Plaintiff negotiated the terms of the Release on his own behalf. Plaintiff admits he had an opportunity to review, revise, and execute the Agreement.

### 7. Consideration in return for the release

Per the Agreement terms, Plaintiff would receive six months pay as consideration for the Release. The Release stipulates in a straightforward manner that Plaintiff is receiving severance benefits that he would not otherwise be entitled to in exchange for releasing Defendant from liability as covered in the Release. (Doc. 1, Ex. A, ¶ 5(b).)

Having considered the totality of circumstances, the court finds that the Release was signed knowingly and voluntarily, and thus, absent fraud, bars Plaintiffs claims.

## B. **Fraud in the Inducement**

Plaintiff claims that the Release is not valid because he was, in fact, fraudulently induced into signing the Agreement by Defendant's false representations that his position had been eliminated. "A signed release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake." *Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 295 (3d Cir. 2003). Under Pennsylvania law, fraudulent inducement may be found when "an opposing party made false representations that induced the complaining party to agree to the contract. *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 205 (Pa. 2007) (citing *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 498 n.26 (Pa. 2004) (citations omitted)). Regardless of whether Plaintiff's allegation is sufficient for a fraudulent inducement claim, Defendant argues that Plaintiff's attempt to invalidate the agreement fails because the parol evidence rule bars him from introducing evidence outside the written contract to support his claim.

Typically, representations made prior to contract formation are considered superseded and disclaimed when the parties have executed a fully integrated written agreement. *Id.* at 206-07. However, the mere existence of a contract does not mean the contract is fully integrated. Rather, for the parol evidence rule to apply:

> [T]here must be a writing that represents the parties'
> entire contract, and that whether there exists such a

> writing is determined by assessing whether the writing appears to be a contract complete in itself, importing a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement. We also noted that an integration clause that states that the writing is meant to represent the parties' entire agreement is a clear sign that the writing is meant to be just that, and thereby expresses all the parties' negotiations, conversations, and agreements made prior to its execution.

*Toy*, 928 A.2d at 204 (citations omitted); *see Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. Ct. 2005) ("[P]arol evidence of prior representations is inadmissible as to a matter covered by the written agreement with an integration clause, unless the parties agreed that those representations would be added to the written agreement but they were omitted because of fraud, accident or mistake." (quotations omitted)).[3]

The Agreement effectuated between the parties contains the following integration clause:

> You agree that this Agreement represents the entire agreement between you and the Company [Defendant] and supersedes any and all prior agreements,

---

[3] It should also be noted that Pennsylvania no longer follows the fraud in the inducement exception to the parol evidence rule. *See Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996) ("The Supreme Court of Pennsylvania found that the parol evidence rule barred consideration of prior representations concerning matters covered in the written contract, even those alleged to have been made fraudulently, unless the representations were fraudulently omitted from the contract.") (citing *HCB Contractors v. Liberty Place Hotel Ass'n*, 652 A.2d 1278, 1279 (Pa. 1995)); *see also Bray v. Dewese*, No. 07-4011, 2008 U.S. Dist. LEXIS 17540, at *2 & n.7 (E.D. Pa. Mar. 6, 2008) (explaining evolution and abandonment of fraud in the inducement exception to parol evidence rule in Pennsylvania).

> arrangements, representations or warranties, whether express or implied, written or oral, that relate to the subject matter of this Agreement (excepting any signed confidentiality agreement with respect to Hershey information, which remains in full force and effect). You also agree that neither Hershey nor any of its agents, representatives, employees, or attorneys have made any representation to you concerning the terms or effects of this Agreement other than those contained in writing herein.

(Doc. 1, Ex. A, ¶ 16.) This integration clause is unambiguous concerning Plaintiff's departure from Defendant – the Agreement was to serve as the "*entire agreement*" between the parties. Further, the Agreement specifically provides that it "supersedes any and all prior agreements, arrangements, representations or warranties . . . that relate to the subject matter of t[he] Agreement." (Doc. 1, Ex. A, ¶ 16.) Thus, as a matter of law, the fraudulent representations regarding the elimination of Plaintiff's job were made prior to the parties entering into contract were superseded by the written contract. Any representations relied upon by Plaintiff should have been incorporated into the writing. Thus, the representations are barred from admission by the parol evidence rule.

12

## IV. **Conclusion**

For the reasons set for above, the court concludes that Plaintiff knowingly and voluntarily released Defendant from all claims he seeks to bring and will therefore grant Defendant's motion to dismiss with prejudice. An appropriate order will follow.

s/Sylvia H. Rambo
Sylvia H. Rambo
United States District Judge

Dated: November 4, 2019